UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
TUCSON DIVISION



HAMZA BENDELLADJ,                )
                                )
        Petitioner,             )
                                )          CV-23-0255-TUC-CKJ-LCK
        v.                      )
                                )   USDC Case No. ____-cv-____
DULGOV, A., WARDEN OF           )
FCI SAFFORD                     )
                                )
        Respondent.             )

---

## PRO SE MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. §2241)

[Return Date to be Fixed by the Court]

COMES NOW HAMZA BENDELLADJ, Petitioner *pro se,* in the above styled and numbered cause, and respectfully submits this Memorandum of Law in support of the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, and would show the Court the following facts, circumstances, and points of law:

## I. Introduction

Under the latest policy of the Federal Bureau of Prisons ("BOP"), Petitioner, Hamza Bendelladj ("Mr. Bendelladj"), should have had his First Step Act earned time credits ("ETCs") applied to his sentence computation. The failure of the Respondent, Warden A. Dulgov of FCI Safford ("Warden" or "Respondent") to provide such application of the ETCs to which Mr. Bendelladj is entitled violates Mr. Bendelladj's constitutionally protected right to due process.

Mr. Bendelladj respectfully requests that this Honorable Court order the Respondent to apply the ETCs to which he is entitled, and the writ be granted for the reasons set forth herein.

## II. Factual Background

**A.** **Custody Information**

1.  Petitioner Hamza Bendelladj is federal prisoner number 64661-019 in the custody of the Federal Bureau of Prisons. Mr. Bendelladj has been designated to serve his sentence at the Federal Correctional Institution in Safford, Arizona and is currently doing so.

2.  Respondent A. Dulgov is the Warden of the Federal Correctional Institution in Safford, Arizona.

**B.** **Statement of Relevant Facts**

1.  On June 26, 2015, Mr. Bendelladj pleaded guilty to (1) conspiracy to commit wire and bank fraud, (2) wire fraud, (3) conspiracy to commit computer fraud and abuse, and (4) computer fraud and abuse, in United States District Court for the Northern District of Georgia.[1]

---

[1] *See, Exhibit #2, Judgment & Commitment Order, United States v. Bendelladj,* Criminal Case No.: 1: 11-cr-0557-AT-2 (N.D.Ga.).

2.    On April 25, 2016, the District Court filed a Judgment and Commitment, sentencing Mr. Bendelladj  to 180 months of imprisonment, followed by five years of supervised release.[2] The United States Court of Appeals for the Eleventh Circuit affirmed.[3]

3.    On January 22, 2019, Mr. Bendelladj pleaded guilty to misdemeanor possession of contraband in the United States District Court for the Eastern District of Arkansas and was sentenced to 3 months' imprisonment, to be served consecutively to the sentence imposed by the United States District Court for the Northern District of Georgia, which he was already serving.[4] Mr. Bendelladj neither appealed nor filed any post-conviction motion for relief with respect to the misdemeanor contraband conviction and sentence.

---

[2] *Id.*

[3] *See United States v. Bendelladj,* 710 Fed. Appx. 384 (11th Cir. 2017) (per curiam).

[4] *See, Exhibit #3, Judgment & Commitment Order, United States v. Bendelladj,* Criminal Case No.: 4:18-CR- 544-8D-1 (E.D.Ar.).

4

4.    On December 17, 2019, the FBOP determined that Mr. Bendelladj may not earn FSA credits towards satisfaction of the 3 month sentence imposed in the Eastern District of Arkansas case.[5]

5.    On December 18, 2019, Mr. Bendelladj filed a *pro se* § 2255 motion in connection with his conviction(s) and sentence in the United States District Court for the Northern District of Georgia, in which he claimed that his trial counsel provided ineffective assistance by failing to object to the sentencing court's imposition of a sentencing enhancement under U.S.S.G. § 2B1.1(b)(4). After briefing on the issue, the sentencing court granted Mr. Bendelladj's motion and, following the parties' stipulation on relief, resentenced him to 143 months' imprisonment.[6]

6.    On March 26, 2022, the FBOP determined that Mr. Bendelladj was eligible to earn FSA credits towards satisfaction of his sentence of

---

[5] *See Exhibit #1, Proof of Exhaustion, FBOP Individualized Needs Plan – Initial Classification, p. 8.*

[6] *See Exhibit #4, Order - Judgment & Commitment, United States v. Bendelladj,* Criminal Case No.: 1: 11-cr-0557-AT-2 (N.D.Ga.).

imprisonment, at least with respect to the 143 month sentence imposed in the Northern District of Georgia case.[7] The comments section of the FBOP's individualized needs plan indicates that Mr. Bendelladj is a "low risk" for recidivism and is thus eligible for ETCs under the Act.[8]

7.    Since the FBOP prepared Mr. Bendelladj's individualized needs plan, in December of 2022, there have been several reversals and changes in their assessment of his eligibility to earn and apply time credits under the FSA.[9]

8.    The Act provides that eligible inmates who successfully participate in certain evidence-based recidivism-reduction programs ("EBRR") or productive activities will earn time credits to be applied toward the inmate's pre-release custody or

---

[7] *See Exhibit #1, Proof of Exhaustion, FBOP Individualized Needs Plan – Initial Classification, p. 8.*

[8] *See id.*

[9] *See Exhibit #1, p. 2.*

supervised release.[10]

9.    With respect to earned time credit, the Ninth Circuit has
described the First Step Act's amendments as follows:

> [P]aragraph 102(b)(1) amends [18 U.S.C.] § 3624
> by adding subsection (g), which is relevant to
> the Act's creation of an earned time credit
> system. [132 Stat.] at 5210-13. The Act requires
> that, within 210 days of its enactment, the
> Attorney General establish a "risk and needs
> assessment system" to, broadly speaking,
> review each prisoner's recidivism risk level,
> award earned time credit as an incentive for
> participation in recidivism reduction
> programming, and "determine when a prisoner
> is ready to transfer into prerelease custody or
> supervised release in accordance with section
> 3624." § 101(a), 132 Stat. at 5196–97. Section
> 3624(g) details the criteria for when a prisoner
> becomes eligible, considering earned time
> credit, for transfer to prerelease custody or
> supervised release. § 102(b), 132 Stat. at
> 5210-13.

> *Bottinelli v. Salazar*, 929 F.3d 1196, 1197–98 (9th
> Cir. 2019).

---

[10] *18 U.S.C. § 3632(d)(4)(C).*

10.     In accordance with 18 U.S.C. § 3632, the United States Department of Justice ("DOJ") published the risk and needs assessment system on July 19, 2019.[11]

11.     With respect to implementation of the risk and needs assessment system, 18 U.S.C. § 3621(h) provides:

(1) In general.--Not later than 180 days after the Attorney General completes and releases the risk and needs assessment system (referred to in this subsection as the "System") developed under subchapter D, the Director of the Bureau of Prisons shall, in accordance with that subchapter–

(A) implement and complete the initial intake risk and needs assessment for each prisoner (including for each prisoner who was a prisoner prior to the effective date of this subsection), regardless of the prisoner's length of imposed

---

[11] *Press Release, U.S. Dep't of Just., Department of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk And Needs Assessment System* (July 19, 2019), https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and (last visited May 8, 2023).

term of imprisonment, and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination;

(B) begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers and add any new evidence-based recidivism reduction programs and productive activities necessary to effectively implement the System; and

(C) begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and completing the effective evidence-based recidivism reduction programs and productive activities.

(2) Phase-in.--In order to carry out paragraph (1), so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction

9

programs or productive activities they need, and be reassessed for

recidivism risk as necessary to effectively implement the System,

the Bureau of Prisons shall--

> (A) provide such evidence-based recidivism reduction
>
> programs and productive activities for all prisoners before
>
> the date that is 2 years after the date on which the Bureau of
>
> Prisons completes a risk and needs assessment for each
>
> prisoner under paragraph (1)(A); and
>
> (B) develop and validate the risk and needs assessment tool
>
> to be used in the reassessments of risk of recidivism, while
>
> prisoners are participating in and completing
>
> evidence-based recidivism reduction programs and
>
> productive activities.[12]

12.     Pursuant to 18 U.S.C. § 3621(h)(1), all inmates in the BOP system

were to receive an initial assessment using the risk and needs

_____

[12] *18 U.S.C. § 3621(h)(1)–(2).*

10

assessment system known as the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN") by January 15, 2020.[13] On January 13, 2022, the Department of Justice announced that the BOP had finalized the FSA time credit rule, and on January 19, 2022, the final rule was published.[14]

13.    Prisoners "who successfully complete[ ] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A). A prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based

---

[13] *Press Release, U.S. Dep't of Just., Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation* (Jan. 15, 2020), https://www.justice.gov/opa/pr/ department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act (last visited May 8, 2023).

[14] *FSA Time Credits*, 87 Fed. Reg. 2705-01, 2022 WL 159155 (Jan. 19, 2022) (codified at 28 C.F.R. §§ 523, 541.).

recidivism reduction programming or productive activities." 18

U.S.C. § 3632(d)(4)(A)(ii).

14. Inmates may begin earning First Step Act time credits ("FTCs")

after the inmate's term of imprisonment commences, but an

inmate cannot earn FTCs for programming or activities in which

he or she participated prior to December 21, 2018. 28 C.F.R. §

523.42. Further, an inmate can earn retroactive application of time

credits for programming or activities in which he or she

participated from December 21, 2018, to January 13, 2022. *Id.*

15. "Section 3624(g) details the criteria for when a prisoner becomes

eligible, considering earned time credit, for transfer to prerelease

custody or supervised release," *Bottinelli,* 929 F.3d at 1198, and

provides that the "Attorney General, in consultation with the

Assistant Director for the Office of Probation and Pretrial

Services, shall issue guidelines for use by the Bureau of Prisons in

determining the appropriate type of prerelease custody or

supervised release and level of supervision for a prisoner placed on prerelease custody pursuant to this subsection," 18 U.S.C. § 3624(g)(6)(A).

16.   As a low risk prisoner, Mr. Bendelladj is entitled to earn 15 days of ETCs for each 30 day period of successful participation in EBRR programming or productive activities recommended based on his risk and needs assessment.

17.   Initially, the FBOP determined that Mr. Bendelladj was precluded from having his ETCs applied to prerelease custody or release to supervision based on his immigration status, which they erroneously characterized as ICE having "lodged a formal detainer on April 5, 2021."[15]

18.   Before November 18, 2022, the BOP took the position that inmates with detainers were ineligible for FSA credits. On November 18, 2022, the BOP issued Program Statement 5410.01 which modified

_____

[15] *See EX #1, p. 4.*

the BOP procedures to allow inmates with detainers to earn FTCs; inmates could not have those FTCs applied until the detainers were resolved.[16]

19.    Recently, on February 6, 2023, the BOP issued a change notice to the program statement in which the BOP deleted the requirement that inmates must have no detainers to have FTCs applied to their sentence.[17]

20.    Thus, the BOP's initial basis for finding that Mr. Bendelladj was ineligible to apply the ETCs he has earned has been repudiated by subsequent changes to their stated policy. The *post hoc* justification, orally offered by Mr. Bendelladj's case manager and as described in his Central Office Administrative Remedy Appeal,

---

[16] *U.S. Dep't of Justice, Federal Bureau of Prisons, Program Statement No. 5410.01, First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. 3632(d)(4),* at 17 (Nov. 18, 2022), https://www.bop.gov/policy/progstat/5410_01.pdf (last visited May 8, 2023).

[17] *U.S. Dep't of Justice, Federal Bureau of Prisons, Change Notice to Program Statement No. 5410.01, First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. 3632(d)(4)* (Feb. 6, 2023), https://www.bop.gov/policy/ progstat/5410.01_cn.pdf (last visited May 8, 2023).

that because the contraband offense for which he received a consecutive 3 month sentence is an ineligible offense under the Act, he is likewise foreclosed from earning ETCs on his 143-month sentence for eligible offenses, is not consistent with proper application of relevant law. Moreover, it makes no sense to allow a ineligible, 3-month sentence, imposed for conduct which occurred after Mr. Bendelladj began serving a sentence for an eligible offense to retroactively disqualify that eligible sentence.

15

### III. Ground for Relief

**Mr. Bendelladj Is Being Deprived of His Due Process Rights -- under the Fifth and Fourteenth Amendments to the United States Constitution -- by the Warden of FCI Safford's Refusal To Apply His Earned Time Credits to Mr. Bendelladj's Sentence as Required under the First Step Act.**

In refusing to apply the ETCs to which Mr. Bendelladj is entitled under the Act to his eligible 143-month operative sentence, the Respondent has denied Mr. Bendelladj his constitutionally protected right to due process. This is true because the Act created a due process protected liberty interest for any federal prisoner who both qualifies to earn ETCs and who complies with FBOP instructions by successfully participating in EBRR or productive activities. *See Madison v. Parker*, 104 F.3d 765, 768 (5th Cir.1997) (noting that, while "[t]he Constitution does not guarantee [] credit for satisfactory behavior while in prison," "some states create such a right" through statutes creating a right to [] credit which can be revoked for misconduct). Failing to apply the ETCs which Mr. Bendelladj earned and has a liberty interest in represents a clear violation of his due process rights in this case.

The FBOP utilized the PATTERN risk assessment tool to determine that Mr. Bendelladj is a low risk for recidivism and thus statutorily eligible to earn 15 days for every 30 days he successfully participates in EBRR or productive activities.[18] There is no excuse for the Respondent denying Mr. Bendelladj the minimum guarantees of due process in connection with his liberty interest in the aforementioned ETCs by failing to apply those credits to his sentence computation for the operative, eligible 143-month sentence.[19]

---

[18] *See EX #1, p. 8.*

[19] Mr. Bendelladj has exhausted his administrative remedies with respect to his request for application of his ETCs. *See Exhibit #1.*

## IV. Relief Requested

Mr. Bendelladj respectfully requests that this Court order the Respondent to apply the ETCs to which he is entitled and the writ be granted for the reasons set forth, *supra*.

## V. Conclusion.

Respondent is depriving Mr. Bendelladj of the ETCs to which he is statutorily entitled with absolutely no due process or rational basis to support Respondent's failure to apply the ETCs which the record conclusively demonstrates Mr. Bendelladj earned under the Act. There can be no question that Mr. Bendelladj enjoys a due process protected liberty interest in the ETCs which he earned. Mr. Bendelladj has meaningfully exhausted his administrative remedies.[20] Thus, the matter is ripe for this Honorable Court's consideration and ruling.

Respectfully submitted this  16  day of May, 2023.

Hamza Bendelladj, *Pro Se*
Register # 64661-019
FCI Safford
P.O. Box 9000
Safford, AZ 85548

---

[20] *See Exhibit #1.*

## VI. Verification

I, Hamza Bendelladj, verify under penalty of perjury, pursuant to 28

U.S.C. §1746 that the foregoing is true and correct. Executed this 16 day of

May, 2023.

Hamza Bendelladj, *Pro Se*
Register # 64661-019
FCI Safford
P.O. Box 9000
Safford, AZ 85548

20